# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JENNIFER VARTANIAN,**
**as the Personal Representative**
**of the Estate of Roobik Vartanian,**

   **Plaintiff,**

**vs.**        **CASE NO.:  8:10-CV-01367-SDM-EAJ**

**OFFICER  RICHARD  HARRELL,**
**Individually; and CITY OF TAMPA, Florida,**

   **Defendants.**

_____/

## DEFENDANT  OFFICER  RICHARD  HARRELL'S
## DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
## AND  MEMORANDUM  OF  LAW

COMES NOW, the Defendant, Officer RICHARD HARREL, in his Individual Capacity,

by and through his undersigned counsel, pursuant to Rule 56 Fed.R. Civ.P., and Local Rule 3.01,

and **Moves** this Honorable Court **for Summary Judgment** in favor of this Defendant and as

good grounds, would state that the record before this Court reflects there are *no genuine issues as*

*to any material facts* and that the movant is entitled to **Summary Judgment** as a matter of law

for the reasons argued herein as supported by the attached Affidavits and Exhibits.

## STATEMENT  OF  THE  CASE

On **June 10, 2010**, the Defendants successfully *Removed* this case to this Court from the

Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Civil

Division.

Following several Dismissed complaints, the Plaintiff filed the SECOND AMENDED

COMPLAINT [DE#19], which remains the Complaint of record in this case.

Pursuant to this Court's Case Management Order, Discovery in this case closed on **June 1, 2011**.

Therefore, this case is ripe for consideration of dispositive Motions for Summary Judgment.   In belief that there are no material facts in dispute that as a matter of law, the sole Defendant, Officer RICHARD HARRELL should be granted Summary Judgment, herein he files his Dispositive MOTION FOR SUMMARY JUDGMENT.

**CLAIMS  BEFORE THE COURT (as to Ofc. Richard Harrell):**

COUNT III:    Excessive Force  - 42 U.S.C. § 1983

**ARGUMENT  AND  MEMORANDUM  OF  LAW**

**Standard  of  Review**

**Motion for Summary Judgment:**  In reviewing a **Summary Judgment** motion, the following **standard of review** was held by this Court  Blumel v. Mylander, 954 F.S. 1547 (M.D. Fla. 1997):

> ". . . **summary judgment** should only be entered when the moving party has sustained its burden of **showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the nonmoving party**.  Sweat v. Miller Brewing Co., 708 F.2d 655) 11th Cir. 1983).  All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 995-97 (5th Cir. 1979), quoting Gross v. Southern Railroad Co., 414 F.2d 292 (5th Cir. 1969). Material factual disputes preclude summary judgment." (emphasis added).

The Supreme Court of the United States, in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), held:

> "In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. (Id. at 317, 106 S.Ct. at 2549)"

The Court further stated, *"Rule 56(e) therefore, requires that non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and*

*admissions on file,' designate 'specific facts showing there is a genuine issue for trial."* <u>Celotex Corp</u>., at 324, 106 S. Ct. at 2553.  As the district court in <u>Coghlan  v. H.J. Heinz Co.</u>, 851 F.Supp 808 (N.D. Tex 1994), summarized:

> "Although a Court must 'review the facts drawing all inferences most favorable to the party opposing the motion,' ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, 'the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial.' FED.R.CIV.P. 56 (e).   **However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice** ... (cites omitted) at 810-811." (emphasis added).

Issues of fact are *"**genuine** only if a reasonable jury considering the evidence presented could find for the nonmoving party."* (emphasis added).  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The case of <u>Riley v. Newton</u>, 94 F. 3d 632 (11 Cir. 1996) is also instructive as to the Summary Judgment standard of review:

> '**Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of Federal Rules as a whole, which are designed to "secure the just, speedy, and inexpensive determination of every action.'"** Id. at 257 (quoting  <u>Celotex</u>, 477 U.S. at 323, 327, 106 S.Ct. at 2552-53, 2554-55)." (emphasis added).

## <u>Qualified  Immunity - Title 42 U.S.C. § 1983</u>

The United States Supreme Court formed the principle of **Qualified Immunity** in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1981):

> *"[G]overnment officials performing <u>discretionary functions</u> **generally are shielded from liability for civil damages** <u>insofar as their conduct does not violate **clearly established** statutory or constitutional rights of</u> which a reasonable person would have known.*
>
> *Reliance on the <u>**objective reasonableness**</u> of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."* <u>Id.</u>, at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410 (citations and footnotes omitted).   (emphasis added)

<u>Dartland v. Metropolitan Dade County</u>, 866 F.2d 1321, 1322 (11th Cir. 1989). See Also: <u>Behrens v. Pelletier</u>, 516 U.S. 299, 116 S.Ct. 834 (1996).

Since it is impossible to "reimmunize" a Defendant Police Officer after a trial, the Court's consideration of *Qualified Immunity* is especially appropriate to a **Motion for Summary Judgment**.  The Motion for Summary Judgment on the shield of *Qualified Immunity* requires a question of law to be decided by this Honorable Court and not the trier of fact.  Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2nd DCA 1997); Anderson v. Creighton, 483 U.S. 635 (1987).

To avoid an entry of **Summary Judgment** against him, the Plaintiff must show that the Law Enforcement Officer's, *"actions violated clearly established constitutional law"*, Ziegler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983), cited with approval in, Dartland, 866 F.2d at 1322. The right, which is claimed to have been violated, must be "**particularized"**:

> *"[O]ur cases establish that the right the official is alleged to have violated must have been* ***'clearly established'*** *in a more particularized, and hence more relevant, sense:* ***The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right***.*"* (emphasis added).

Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

The law of the 11th Circuit Court of Appeals is that for a right to be ***Clearly Established*** for purposes of *Qualified Immunity*  a right may be **clearly established** for Qualified Immunity purposes in **one of three ways: (1)** case law with indistinguishable  facts clearly establishing the constitutional right, Long v. Slaton*,* 508 F.3d 576, 584 (11th Cir. 2007); **(2) a broad statement of principle** within the Constitution, statute, or case law that clearly establishes a constitutional right, *id.*; **or (3) conduct so egregious** that a constitutional right was clearly violated, even in the total absence of case law.  **Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).**

In the case of Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991), the 11th Circuit Court of Appeals explained the **two-part analysis** to apply the **objective-reasonableness test** to a Qualified Immunity defense:

> *"...this circuit derived a two-part analysis for applying the objective-reasonableness test to a qualified immunity defense:*
>
> *1. The defendant* ***public official must first prove that 'he was acting within***

> *__the scope of his discretionary authority__ when the allegedly wrongful acts occurred.'*
>
> *2. Once the defendant public official satisfies his burden of moving forward with the evidence, __the burden shifts to the plaintiff to show lack of good faith on the defendant's part__. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'*
>
> *Rich, 841 F.2d at 1563-64 (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983) (per curiam)); Hutton, 919 F.2d at 1537. Under the Zeigler/Rich formulation of the objective-reasonableness test, __a government official proves that he acted within his discretionary authority by showing ' 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' '__ Rich, 841 F.2d at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)); Hutton, 919 F.2d at 1537."*

More recently, in the landmark case of Saucier v. Katz, 533 U.S. 194, 201 (2001) the United States Supreme Court firmly established the **two step inquiry** that the courts should make in ruling upon the issue of ***Qualified Immunity***:

> **(1)** *"...taken in the light most favorable to the party asserting injury, **do the facts alleged show the officer's conduct violated a constitutional right?**"* id. , *"...If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."* id., If on the other hand a violation "could" be made out **then**:
>
> **(2)** *"...the next, sequential step is to ask **whether the right was clearly established**. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, <u>not as a broad general proposition</u>; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."* id.

The 11th Circuit has held that, *"[w]hether a claimed right 'is __clearly established__ is a question of law for the court to decide.'"* Courson at 1487. (citing to Andreu v. Sapp, 919 F.2d 637, 641 (11th Cir.1990), see also: McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). More recently, the Supreme Court revised and held that the Saucier *two-step* inquiry,

does <u>not</u> have to be done *in sequence* and therefore both or either *steps* can be considered in any order at the discretion of the courts.   <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009)

In  the seminal case of <u>Lassiter v. Alabama A & M</u>, 28 F.3d 1146, 1149 (11th Cir.1994), the 11th Circuit Court of Appeals further reinforced the importance of **Qualified Immunity** to Officers sued in their "Individual Capacities", such as Defendant Officers in the instant case:

> *"...**that qualified immunity protects government actors is the usual rule; <u>only in exceptional cases</u> will government actors have <u>no shield</u> against claims made against them <u>in their individual capacities</u>.** [FN2]  <u>Harlow</u>, 457 U.S. at 818, 102 S.Ct. at 2738 (officials 'generally are shielded from liability for civil damages);  <u>Barts v. Joyner</u>, 865 F.2d 1187, 1190 (11th Cir.1989) ('The Harlow decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983.);  <u>Dartland v. Metropolitan Dade County</u>, 866 F.2d 1321, 1323- 24 (11th Cir.1989) (when 'no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where [First Amendment case law] would lead to the inevitable conclusion that the [act taken against] the employee was unlawful').  <u>Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that<u> only a plainly incompetent officer or one who was knowingly violating the law</u> would have done such a thing, the government actor has immunity from suit.</u>  See <u>Malley v. Briggs</u>, 475 U.S. 335, 341-43, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986).  **Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity."**  (emphasis added).*

And, in the more recent case of **<u>Saucier</u>**, the United States Supreme Court held that:

> *"Qualified immunity is 'an entitlement <u>not to stand trial or face the other burdens of litigation</u>.'  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).   **The privilege is '<u>an immunity from suit rather than a mere defense to liability</u>; and like an absolute immunity,** it is effectively lost if a case is erroneously permitted to go to trial.' Ibid. As a result, 'we repeatedly have stressed the <u>importance of resolving immunity questions at the earliest possible stage in litigation</u>.'  <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)."  (emphasis added).  <u>Saucier</u> at 194.*

In  fact, the Court and the 11th Circuit Court of Appeals have held that this *"earliest possible stage of litigation"* can be at the Rule 12(b)(6) stage, i.e. <u>before</u> Discovery:

> *"**Once the affirmative defense of <u>qualified immunity</u> is advanced**, the allegations of the complaint take on great importance in a lawsuit. 'Unless the plaintiff's allegations state a claim of violation of clearly established law, **a defendant pleading qualified immunity <u>is entitled to dismissal</u>***

***before the commencement of discovery.'*** Mitchell v. Forsyth, *472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985);* Behrens v. Pelletier, *516 U.S. 299, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996) ('At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for "objective legal reasonableness".').* ***The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only.*** ***See*** Hunter v. Bryant, ***502 U.S. 224, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)*** *('[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation.');* Mitchell, *105 S.Ct. at 2815* ***(entitlement of qualified immunity is 'immunity from suit rather than a mere defense to liability; and...is effectively lost if a case is erroneously permitted to go to trial').''*** (emphasis added). Marsh v. Butler County AL, 268 F.3d 1014, 1022 (11th Cir. 2001). (emphasis added).

Thus, since the *relevant* and *material facts* of this case are not in dispute, and since discovery has not changed the material facts of the case, the instant case is ripe consideration of Summary Judgment for Officer RICHARD HARRELL based on… ***Qualified Immunity****.*

### STATEMENT OF UNDISPUTED FACTS

On Saturday, September 6, 2008, ROOBIK VARTANIAN was working as an employee at *Club Prana*, which is located in the Ybor City area of the CITY OF TAMPA. [1] On this same date, Jeffie Jones, a resident of Orlando, Florida patronized Club Prana and was ejected from the *Club Prana*. [2] ROOBIK VARTANIAN was involved in the ejection of Jeffie Jones from the *Club Prana*.[3] There was a heated exchange during the ejection, between Jeffie Jones and ROOBIK VARTANIAN.[4] Shortly after the ejectment of Jeffie Jones, ROOBIK VARTANIAN obtained a 40 Caliber *Taurus* brand, semi-automatic pistol that had a silver colored slide and a black grip and frame from fellow *Club Prana* employee Kenneth Bennett. [5][6][7]

---

[1] See ¶ 10 of the SECOND AMENDED COMPLAINT [DE#19].
[2] See Composite Deposition of Jeffie Jones Attached hereto as Exhibit "H".
[3] See Composite Deposition of Jeffie Jones attached hereto as Exhibit "H".
[4] See ¶ 11 of the SECOND AMENDED COMPLAINT [DE#19]; See Also: Composite Deposition of Jeffie Jones attached hereto as Exhibit "H".
[5] The *Taurus* gun given to ROOBIK VARTANIAN and later, following the shooting, recovered as evidence by TPD is a *Taurus PT 24/7 PRO* , 40 Smith & Wesson caliber, semi automatic pistol, with a silver colored (stainless steel) slide and a black composite frame and grips, Serial Number: SZK49180. The gun was found with one (1) live round in the chamber and 9 live rounds in the magazine/clip (which holds 10 rounds). Pictures of the *Taurus* gun are

Shortly thereafter, in the early morning hours of Saturday, **September 6, 2008**, at approximately **1:20 AM**, CITY OF TAMPA Police Officers Defendant, Officer RICHARD HARRELL and his partner Officer Cesare Myles [8] were on routine patrol [9] of the Ybor City area of the CITY OF TAMPA.   Officer HARRELL was driving a gray, unmarked Chevrolet Astro Van belonging to CITY OF TAMPA Police.  Both Ofc. RICHARD HARRELL and Ofc. Myles were working in plain clothes pursuant to their duties on the *Street Anti-Crime Squad* ("SAC"). [10] The Officers were wearing Tampa Police Department issued Identification Vests [11] , and displayed their Tampa Police Badges on chains around their necks.[12]   The Vests they were wearing have a large embroidered Tampa Police Badge on the upper right and the word "POLICE" on the left hand side, both embroideries are in reflectorized gold thread on the front of the vest *and* the vests have "POLICE" in large letters in reflectorized gold thread on the back.[13]   Officer RICHARD HARRELL was also wearing his Tampa Police authorized sidearm/handgun [14]  in a clip-on holster and Officer Myles was wearing his duty belt with holster with his Tampa Police authorized handgun.

---

attached here to as Exhibit "C", as attached to the Affidavit of Det. Charles Massucci, which is attached here to as Exhibit "C".

[6] See ¶ 13 of the SECOND AMENDED COMPLAINT [DE#19]; See Also:  Composite Deposition of  Kenneth Bennett attached hereto as Exhibit "I".

[7] See Composite Deposition of K.Bennett attached hereto as Exhibit "I".

[8] Ofc. Cesare Myles is not a Defendant/Party in this lawsuit.

[9] Patrolling and looking specifically for: auto burglaries and thefts, robberies, and other similar offenses.  See Affidavits of RICHARD HARRELL, Cesare Myles, and IA Case Summary attached hereto as Exhibits "A", "B" and "G" respectively.

[10] See Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[11] See Photos of Both RICHARD HARRELL and Cesare Myles taken on the morning of this incident that show what both Officers were wearing at the time of the incident/shooting – attached hereto as Exhibits "E" and "F" as attached to the Affidavit of Det. Charles Massucci and attached hereto as Exhibit  "C". Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[12] The Badge displayed on a chain around the neck is part of the authorized uniform of the day for Officers in the "SAC" team.  Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[13] See Photo of Vest itself (both front and back) taken the morning of the shooting at TPD, attached as Exhibit "G" to Affidavit of Det. Charles Massucci attached hereto as Exhibit "C".

[14] A 9mm *Glock 19* semi-automatic handgun, black in color, Serial Number: EUW207US, which holds 15 rounds in the magazine/clip and one chambered for a total of sixteen (16) rounds when fully charged.  HARRELL's gun

Officers RICHARD HARRELL and Cesare Myles had just turned eastbound on East 6th Avenue off of North 16th Street and were proceeding eastbound on East 6th Avenue when they observed two black males run south across East 6th Avenue [15] and then observed three (3) white males chasing and yelling at the black males. The white males were on the north side of East 6th Avenue on the raised berm [16] adjacent to the railroad tracks and the black males were standing at street level on the south side, just east of 1609 East 6th Avenue.[17] Officer RICHARD HARRELL decided to continue driving east past these individuals and stop to monitor the situation. [18] [19] The white males were diagonally behind the Astro Van on the driver's side and the black males were diagonally behind the Astro Van on the passenger side. [20] The white males and the black males were yelling back and forth at each other. [21]

Suddenly, Officer RICHARD HARRELL saw a large male subject come running up to the three (3) white males in a southwesterly direction and toward the direction of where the two

contained 15 fifteen live rounds following the shooting when taken into custody by TPD, thus corroborating that HARRELL only fired one round. See Affidavit of Ofc. RICHARD HARRELL attached hereto as Exhibit "A".

[15] This was in the area of 1609 East 6th Avenue. Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[16] The raised Berm area is approximately 4 feet above the street level of East 6th Avenue. See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[17] See Scene photos: Composite Exhibits "C" and "D" as attached to Affidavit of Det. Charles Massucci attached hereto as Exhibit "C". Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[18] The police Astro Van was positioned near the front of 1611 East 6th Avenue, which was where ROOBIK VARTANIAN kept an apartment, although Ofc. RICHARD HARRELL was not aware of that at that time – See page 5 of Composite Exhibit "C" (see the red building shown directly behind the Astro Van) as attached to the Affidavit of Det. Charles Massucci attached hereto as Exhibit "C". Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[19] Ofc. HARRELL has testified that *monitoring* disputes of this type (as opposed to stopping immediately and getting involved) is operationally normal as many times these verbal disputes work themselves out and sometimes police intervention will only worsen the dispute. This testimony as to this procedure of *monitoring* is also attested to by Ofc. Cesare Myles in his Affidavit. See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively. See also the Depositions of RICHAR HARRELL and Cesare Myles attached hereto as Exhibits "J" and "K" respectively.

[20] See Diagram (not to scale) of shooting scene and the relative positions of people and objects as prepared as part of the investigation of this incident attached hereto as Exb "A" as attached to the Affidavit of Det. Charles Massucci attached hereto as Exhibit "C". Also See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[21] See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively. See also the Depositions of RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "J" and "K" respectively.

(2) black males were standing. [22]   This large male subject (later identified as ROOBIK VARTANIAN), was carrying a silver and black handgun [23] in a "low ready" position [24], whereupon Ofc, HARRELL alerted his partner Ofc. Myles by saying "gun."   Officer RICHARD HARRELL then immediately exited the van, as did Ofc. Myles. [25]   Officer RICHARD HARRELL heard ROOBIK VARTANIAN yell: *"I'm gonna shoot that mother fucker"* and *"I'm going to kill that nigger".*[26]   ROOBIK VARTANIAN continued past the original three (3) white males and still heading in the direction of the two (2) black males, when Officer RICHARD HARRELL yelled to ROOBIK VARTANIAN *"Police. Drop your weapon!"* and then again *"Police. Drop your weapon!"* in rapid succession, at which point ROOBIK VARTANIAN, with gun in hand, spun towards Officer RICHARD HARRELL, whereupon Officer RICHARD HARRELL fired one (1) shot, striking VARTANIAN in the left chest area, which took VARTANIAN to the ground immediately. [27] [28] [29]   RICHARD HARRELL called in the shooting and for Emergency Services to respond for immediate medical attention for VARTANIAN. [30]

---

[22] See: Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".

[23] See ¶ 14 of the SECOND AMENDED COMPLAINT [DE#19] for admission that ROOBICK VARTANIAN was carrying a gun, which he acquired from *"another employee of the bar"* – see ¶ 13 of SECOND AMENDED COMPLAINT [DE#19].  This gun was later identified as Kenneth Bennett's *Taurus* gun, which he *gave* to ROOBIK VARTANIAN or allowed VARTANIAN to *take*.  In any event, it is undisputed that ROOBIK VARTANIAN *acquired* the loaded *Taurus* gun from Kenneth Bennett just before the shooting.  Following the shooting, *Taurus* 40 caliber gun was found to have one (1) live round chambered and 9 rounds of ammunition in the magazine/clip. See Affidavit of Det. Charles Massucci attached hereto as Exhibit "C".  See also photo of *Taurus* gun at scene in Composite Exhibit "C" as attached to Det. Massucci's Affidavit. See Also: Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".

[24] Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".

[25] They exited the Van from the front doors closest to them, i.e. Ofc. HARRELL through the driver's door, and Ofc. Myles through the front passenger door.  See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.  See photos of Astro Van as contained in Exhibit "D" of the Affidavit of Det. Charles Massucci attached hereto as Exhibit "C".

[26] See Affidavit of Ofc. HARRELL attached hereto as Exhibit "A" at ¶ 8.   See also Deposition of Ofc. RICHARD HARRELL attached hereto as Exhibit "J".

[27] See Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".

[28] See Medical Examiner's Report which corroborates the angle of the shooting, wound and manner of death of ROOBICK VARTANIAN, attached hereto as Exhibit "E".

[29] Officer RICHARD HARRELL estimates he was approximately 25 to 30 yards from VARTANIAN when the shooting occurred – See Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A" at ¶ 8.

[30] See Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".

ROOBIK VARTANIAN was transported to a Hospital, but died from the gunshot wound shortly thereafter.

Officer Cesare Myles heard Ofc. RICHARD HARRELL'S verbal commands to ROOBIK VARTANIAN, but did not see ROOBIK VARTANIAN's actions, nor did he see Officer HARRELL fire his weapon.   Following the shooting, Ofc. Myles detained the two (2) black males on the south side of the roadway. [31]

As a result of the investigation of this shooting, the State Attorney's Office ruled that the use of deadly force by Ofc. RICHARD HARRELL was justified pursuant to Chapters 776.012 and 776.031, *Florida Statutes*. [32]   The Internal Affairs Investigation by the CITY OF TAMPA Police Department also found RICHARD HARRELL *exonerated* of any wrong doing. [33]

## ARGUMENT  AND  MEMORANDUM  OF  LAW

### COUNT III - 42 U.S.C. § 1983  Claim of  Excessive  Force

As an initial matter, it is firm law that, while the *Fourteenth Amendment* may be noticed as an enabling Amendment as to the States, uses of force and *seizure*, such as the one at issue in the instant case, must be reviewed under  the *Standard of Review* of the **Fourth Amendment** [34].

The sole Count against Defendant, Officer RICHARD HARRELL, in his Individual Capacity, is that of alleged *Excessive Force* in violation of 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth Amendments. [35]   The Plaintiff alleges that:  **(1)** Officer RICHARD HARRELL *unlawfully seized* ROOBIK VARTANIAN *"when he intentionally fired a shot at* [him]"; [36]  **(2)**  that Officer HARRELL *"failed to identify himself, investigate the situation, give warning to the decedent, or consider that Roobik Vartanian might be defending himself or his*

---

[31] One was the aforementioned "Jeffie Jones" and the other his companion Philip Ibrahim, See Affidavit of Ofc. Cesare Myles attached hereto as Exhibit "B".
[32] See State Attorney Mark Ober's Letter of September 29, 2008 attached hereto as Exhibit "F".
[33] See copy of Internal Affairs Report Summary attached hereto as Exhibit "G".
[34] Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989).
[35] SECOND AMENDED COMPLAINT [DE#19] at ¶ 41.
[36] SECOND AMENDED COMPLAINT [DE#19] at ¶ 37.

*family in a lawful manner."* [37]; **(3)** that Officer RICHARD HARRELL's use of force was *unreasonable* given the totality of the circumstances: (3a) *Roobik Vartanian was committing no crime and was not about to commit any crime….",* (3b) *Vartanian did not pose a threat to Defendant OFFICER RICHARD HARRELL, or any other person present,* (3c) *Roobik Vartanian was in no way trying to escape or flee the area.*

None of these claims can stand against Defendant, Officer RICHARD HARRELL.  As to **(3c)** fleeing or escape are not at issue here, and while mentioned in the seminal case of <u>Graham v. Conner</u>, 490 U.S. 386, 109 S.Ct. 1865 (1989) are not *requisite* to a justified use of force by an Officer.  In other words, one does not have to be fleeing or escaping in order to be lawfully shot. [38]     As to **(3b)** Officer HARRELL and Ofc. Myles both attest that warnings yelled as VARTANIAN prior to Ofc. HARRELL shooting him. [39]   Even if that was not the case, or found by the Court to not be the case, a warning is not always possible, nor does <u>Graham v. Conner</u> require that one be given. [40] [41]   As to **(3a)** it was Officer HARRELL's *reasonable* belief that when he observed VARTANIAN carrying the *Taurus* firearm openly and in a threatening manner, that he had *probable cause* to arrest VARTANIAN for violations of either or both Chapters 790.10  (*Improper exhibition of a Firearm*) and 790.053 (1)  (*Open carry of a Firearm*) of the *Florida Statutes*, and after turning towards Ofc. HARRELL for violation of Chapter 784.07 (Aggravated Assault), *Florida Statutes,* and that he was authorized under Florida Law to defend

---

[37] <u>Id</u>. at ¶ 38.

[38] <u>Penley v. Eslinger</u>, 605 F.3d 843 (11th Cir. 2010); <u>McCullough v Antolini</u>, 559 So.3d 1201 (11th Cir. 2009); <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158 (11th Cir. [FLA] 2009); <u>Harrell v. Decatur</u>, 41 F.3d 1494 (11th Cir. 1995); <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1157 (11th Cir.2005).

[39] See: Affidavits of Officers RICHARD HARRELL and Cesare Myles attached hereto as Exhibits "A" and "B" respectively.

[40] <u>Penley v. Eslinger</u>, 605 F.3d 843 (11th Cir. 2010); <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158 (11th Cir. [FLA] 2009);

[41] As noted by the court in <u>Penley v. Eslinger</u>, 605 F.3d 843, 850 (11th Cir. 2010): <u>Garner</u> is not **"a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' "** <u>Scott</u>, 550 U.S. at 382, 127 S.Ct. at 1777. Instead, "<u>Garner</u> was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation." <u>Id</u>. Citing to: <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769 (2007).

himself and others. [42]   Moreover, it needs to be noted, that in light of the above cited Florida

Statutes, Ofc. RICHARD HARRELL *reasonably* believed that his actions were *reasonable* and

supported by Florida Law, and he was had no *"fair warning"* under Florida Law that his actions

were clearly unlawful or unlawful in anyway. [43]   Thus, any claim that VARTANIAN was not

committing any crime is of no day from the perspective of Ofc. HARRELL or any other

*reasonable* officer.     As to **(2)**, under these rapidly evolving and split-second events, Ofc.

HARRELL had no ability or time to *investigate the situation*, [44] and any such assertion is

theoretical and unrealistic given these rapidly unfolding events, of the type that led the Supreme

Court to direct the courts that the Officer's actions must be evaluated ***"on a case-by-case basis***

***'from the perspective of a reasonable officer on the scene***, *rather than with the 20/20 vision of*

*hindsight.' "* Post v. City of Fort Lauderdale, *7 F.3d 1552, 1559 (11th Cir.1993) (quoting*

Graham, *490 U.S. at 396, 109 S.Ct. at 1872), modified, 14 F.3d 583 (11th Cir.1994)."* [45]

        Thus, we arrive at the gravamen of this claim by the Plaintiff as to Officer RICHARD

HARRELL, i.e.: the use of potentially deadly force against ROOBIK VARTANIAN by Ofc.

HARRELL as *seizure* and alleged use of *excessive force* as an alleged *constitutional violation.*

Officer RICHARD HARRELL is entitled to *Qualified Immunity* since **(1)** his use of force under

the *facts* known to him, was *reasonable* and no constitutional right was violated, **and (2)** if the

Court believes that a right was violated, that right was not *"clearly established"* at the time of

this shooting. [46]

---

[42] See: Affidavit of Officer RICHARD HARRELL attached hereto as Exhibit "A".
[43] The law must show unto an Officer *fair and clear notice* that his alleged conduct is unconstitutional, under Florida criminal law and the law of the 11th Circuit, it is constitutionally permissible to use deadly force when the Officer has probable cause to believe the suspect poses a threat of serous harm, either to the officer or others.  Carr v. Tatangelo, 338 F.3d 1229, 1268 (11th Cir. 2003); Willingham v. Loughman, 261 F.3d 1178, 1186 (11th Cir. 2001).
[44] Or consider if VARTANIAN was *defending* himself, since there was not time for such an inquire, nor do the courts require such an inquiry in rapidly evolving event such as faced Ofc. HARRELL.
[45] Penley v. Eslinger, 605 F.3d 843, 850 (11th Cir. 2010).
[46] Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001), in light of Pearson v. Callahan, 129 S. Ct. 808 (2009).

As prescribed by <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991), at the time of the shooting of ROOBIK VARTANIAN, and therefore the alleged violation of the Plaintiff's civil rights, it is uncontroverted that Defendant, Officer RICHARD HARRELL was on-duty, and working in his capacity as a Police Officer, pursuant to his duties for the CITY OF TAMPA Police Department and therefore under <u>Courson</u>, was *"acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."*  This fact is not contested by the Plaintiff in his "SECOND AMENDED COMPLAINT [DE#19]." [47]

Since Part 1 of the <u>Courson</u> analysis has been proved by the Defendant, *"...**the burden shifts to the plaintiff to show lack of good faith on the defendant's part**. This burden is met by proof demonstrating that the defendant public **official's actions violated clearly established constitutional law.***" <u>Courson</u> at 1487.   As this Court has held: *"then the plaintiff must demonstrate that the official **violated clearly established law** measured under an objective standard of which a reasonable person would have known.  See <u>Montoute v. Carr</u>, 114 F.3d 181 (11th Cir.1997);  <u>Powell v. Georgia Department of Human Resources</u>, 114 F.3d 1074 (11th Cir.1997);  <u>Pickens v. Hollowell</u>, 59 F.3d 1203, 1205 (11th Cir.1995);  <u>Hartsfield v. Lemacks</u>, 50 F.3d 950, 953 (11th Cir.1995)."* (emphasis added).  <u>Riebsame v. Prince</u>, 267 F.Supp.2d 1225, 1232 (M.D. Fla. 2003).   This is also a burden that this Plaintiff cannot bear under the *relevant* and *material* facts of this case.

<u>**No  Constitution  Violation**</u>

As noted by the 11th Circuit Court in <u>Penley v. Eslinger</u>, 605 F.3d 843, 851-52 (11th Cir. 2010), as in <u>Penley</u>, this VARTANIAN case hinges on the second <u>Graham v. Conner</u> factor, that of whether or not ROOBIK VARTANIAN *posed an immediate threat* to Ofc. HARRELL, Ofc. Myles, the two black males, or others.   The answer, as found in <u>Penley</u>, is yes.   ROOBIK

---

[47] See ¶'s 9, 16, and 23  of the "SECOND AMENDED COMPLAINT [DE#19]."

VARTANIAN did *pose an immediate threat* to Ofc. RICHARD HARRELL, or at the very least *reasonably* appeared to be an *immediate threat* from the perspective of Ofc. HARRELL.   And the courts have held that the use of deadly force by an Officer is justified when the suspect poses a threat of serious harm. [48]

While some would characterize this case as one requiring a staggering amount of factual material, for the purposes of the *Qualified Immunity* analysis of this Honorable Court, that simply is not the case.   The courts have held that the proper analysis of the actions of an Officer's use of force must be from the perspective of *a reasonable officer possessing the same particularized information as the subject officer* [49].   In the instant case, the *actual particularized facts* / information  available to Defendant, Officer RICHARD HARRELL, upon which he had to rely in making his decision to use potentially deadly force and therefore whether or not to *seize* VARTANIAN, was very limited in scope when viewed in the context of the greater facts that surround the total events as they related to ROOBIK VARTANIAN, his meeting with Jeffie Jones [50] and what transpired thereafter.

ROOBIK VARTANIAN was seen by Officer RICHARD HARRELL carrying a firearm in a *"low ready"* position, in any case, in his hand while shouting the threats : *"I'm gonna shoot that mother fucker"* and *"I'm going to kill that nigger"* [51], after already observing VARTANIAN and his fellow bouncers chasing the two black males across the street.   Given the totality of those *facts,* and in light of Florida criminal law, VARTANIAN was committing **a serious crime**. [52] Moreover, it was clear, to any reasonable officer such as RICHARD HARRELL, that

---

[48] Willingham v. Loughnan, 261 F.3d 1178, 1186 (11th Cir.2001).
[49] Penley v. Eslinger, 605 F.3d 843, 852 (11th Cir. 2010); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).
[50] And Phillip Ibrahim.
[51] See Affidavit of Ofc. HARRELL attached hereto as Exhibit "A" at ¶ 8.   See also Deposition of Ofc. RICHARD HARRELL attached hereto as Exhibit "J".
[52] See: Penley v. Eslinger, 605 F.3d 843 (11th Cir. 2010) and this Court's holding in the case of Ogletree v. Columbia County, 34 F.Supp.2d 1349 (M.D.Fla.,1997):  citing to Graham v. Conner at 396.

VARTANIAN posed, or appeared to pose, an *immediate threat* to HARRELL, Ofc. Myles, the two black males and countless others within VARTANIAN's created zone of threat.   Even if HARRELL was *mistaken* in his analysis under Penley, Montoute, and the case of Carr v. Tatangelo, 338 F.3d 1259 (11th Cir. 2003), Ofc. HARRELL is shielded by *Qualified Immunity* from any mistaken assumptions that he might have made, although asserts he made no mistakes based on what was known to him at the time.   In Carr, the Officer shot Carr after mistakenly believing that Carr had pointed a gun at another Officer and after he had heard what he thought was a gun being *racked*, when in fact, Carr apparently threw a rock (did not point a gun) and the *racking* sound was apparently the sound of Carr's sunglasses.   Nevertheless, the court found that the *mistake* in Carr was *reasonable* under the totality of the circumstances.   When compared with the *facts* of the VARTANIAN case at bar, the *facts* known and believed by Ofc. RICHARD HARRELL are far more compelling for a grant of Summary Judgment based on *Qualified Immunity.*

If this Honorable Court does not find that the Defendant, Officer RICHARD HARRELL did in fact have *probable cause* to use deadly force to seize/stop ROOBIK VARTANIAN, it is undeniable that, notwithstanding the Plaintiff's conclusory and/or false allegations in the Plaintiff's SECOND AMENDED COMPLAINT [DE#19],   **Ofc. HARRELL, had at least *Arguable Probable Cause* to use potentially deadly force** upon his belief that ROOBICK VARTANIAN, clearly armed with a handgun and turning towards Officer RICHARD HARRELL and Officer Cesare Myles, posed an immediate threat of harm to the officer and others.   In the alternative, if the Court is not completely convinced that ROOBICK VARTANIAN turned towards Ofc. RICHARD HARRELL, Officer HARRELL still should be shielded by *Qualified Immunity* since his actions were *reasonable* in defense of Jeffie Jones and/or Phillip Ibrahim who VARTANIAN was chasing and threatening while holding the *Taurus* .40 Caliber handgun.   Thus, Officer

RICHARD HARRELL's action of defending those two black males (as well as the likely numerous other unknown / unidentified individuals in the densely populated area of the Ybor City section of Tampa) was *reasonable* under the circumstances and facts shown and the governmental interest of protecting those individuals from VARTANIAN's threat outweigh the intrusion of the rights ROOBIK VARTANIAN had, since VARTANIAN chose to take the actions he did, which resulted in this tragedy. [53]

The Federal court's have found that for *Qualified Immunity* to be granted, the standard is not just the existence of *Probable Cause*, but whether or not <u>*Arguable Probable Cause*</u> existed in the mind of the Officer. [54]   In fact, this Honorable Court has held *Arguable Probable Cause* to be the standard in the case of  <u>Wilson v. Zellner</u> 200 F.Supp.2d 1356, 1362-63 (M.D. Fla. 2002); *affirmed* 52 Fed.Appx. 487 (11th Cir. 2002). [55]   Here, on the *material* facts of this case, it is undeniable that, at the least,  *Arguable Probable Cause* did exist in the mind of Officer RICHARD HARRELL, on the facts available to him and any other objectively reasonable Officer in the same rapidly evolving circumstances  and possessing the same knowledge as Ofc. RICHARD HARRELL could have believed that *Probable Cause* did exist to believe that ROOBICK VARTANIAN did pose an immediate threat of harm to the officer and others. [56]

In the case of  <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1274 (11th Cir. 2002), the 11th Circuit Court of Appeals held that:

> *"An officer sued for having made an arrest without probable cause <u>is</u> <u>entitled to qualified immunity</u> if there was <u>arguable probable cause</u> for the arrest, which is a more lenient standard than probable cause.</u>   See <u>Jones v. Cannon</u>, 174 F.3d 1271, 1283 n. 3 (11th Cir.1999) ('Arguable probable cause, not the higher standard of actual probable cause, governs the*

---

[53] See:  <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156-7 (11th Cir. 2005).

[54] See: *See* <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th Cir .2009); Also See: <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158 (11th Cir. 2009).

[55] Citing to: <u>Von Stein v. Brescher</u>, 904 F.2d 572, 579 (11th Cir.1990); <u>Gorra v. Hanson</u>, 880 F.2d 95, 97 (8th Cir.1989); <u>Redd v. City of Enterprise</u>, 140 F.3d 1378, 1382 (11th Cir.1998).

[56] <u>Brown v. Abercrombie</u>, 151 Fed.Appx. 892, 893 (11th Cir. 2005); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002).

*qualified immunity inquiry.');  **Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997)** ('In order to be entitled to qualified immunity from a Fourth Amendment claim, **an officer need not have actual probable <u>cause but only 'arguable probable cause,'</u> i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.')."* (emphasis added).

The 11th Circuit further explained the standard for granting *Qualified Immunity* based on *Arguable Probable Cause* and *mistakes* in the heretofore cited case of <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir.1997), wherein, in pertinent part, the 11th Circuit held:

> *"**We have repeatedly held that because only arguable probable cause is required, <u>the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed</u>.** See, e.g.,* <u>Hunter v. Bryant</u>, *502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (holding that secret service officers were entitled to qualified immunity 'if a reasonable officer could have believed that probable cause existed to arrest [the plaintiff]');* <u>Eubanks</u>, *40 F.3d at 1160 (holding that the standard for arguable probable cause is 'whether a reasonable officer ... could have reasonably believed that probable cause existed....').  **'Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'** <u>Hunter</u>, 502 U.S. at 227, 112 S.Ct. at 536 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)) (internal quotations marks omitted).  **Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment,' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'** <u>Malley v. Briggs</u>, 475 U.S. 335, 343, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986)."* (emphasis added).

And, the case of <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir.1997) is *factually* a remarkably similar case to the instant VARTANIAN case at issue here and is very instructive as to the issue of *Qualified Immunity* before this Court.  In **Montoute**, Sebring Officer Carr did *not* shoot Frances Montoute *as he approached* with a sawed-off shotgun in his hand, but rather, shot at him twice as Montoute was running away from him, hitting Montoute once, but not killing him.  The 11th Circuit Court of Appeal, in reversing the Southern District's Denial of *Qualified Immunity*, holding, in pertinent part, that:

> In view of all of the facts, we cannot say that an officer in those volatile circumstances could not reasonably have believed that Montoute might wheel around and fire his shotgun again, or might take cover behind a

18

parked automobile or the side of a building and shoot at the officers or others. Indeed, if the officers had allowed Montoute to take cover, or perhaps circle back around to the crowd, he could have posed even more danger than when he had presented a clear target as he approached them. Recall that **even Montoute concedes that Sergeant Carr would have been protected by qualified immunity if he had shot Montoute as he approached the officers.**  Under the circumstances, Carr is no less entitled to qualified immunity because he shot Montoute later instead of sooner. (emphasis added).  Montoute at 185

The 11th Circuit went on to explain it's holding by noting that:

Our decision in this case is consistent with the holding in **Harrell v. Decatur County, 41 F.3d 1494 (11th Cir.1995) vacating and adopting dissent in 22 F.3d 1570 (11th Cir.1994)**.  In that case, we upheld qualified immunity where a law enforcement officer shot and killed a felony suspect, because the **officer reasonably could have believed** the suspect was **reaching under the seat of the automobile for a weapon**.  **22 F.3d at 1580-81.**  If qualified immunity applies in those circumstances, as we held in **Harrell**, it applies where the felony suspect already had a dangerous weapon in hand and refused to drop it.  (emphasis added)  Montoute at 185

Officer RICHARD HARRELL similarly argues here that *if Qualified Immunity* applies to an Officer who shoots an armed individual in the back (Montoute), and to another Officer who shoots an unarmed man reaching under a car seat (Harrell v. Decatur County) [57], or where an Officer is granted *Qualified Immunity* in the shooting of a 15 year-old armed with a plastic gun (Penley), then surely, in the case of VARTANIAN, where an Officer is facing a large, enraged, subject who is clearly armed with a sliver and black semi-automatic pistol, who does not comply with the Officer's orders of *"Police, drop your weapon!"* Officer RICHARD HARRELL should be granted Summary Judgment based on *Qualified Immunity*.

In Montoute, even the attorney for Montoute admitted to the 11th Circuit Court, at oral argument, that the Officer Carr would have been entitled to *Qualified Immunity* if Ofc. Carr had shot Frances Montoute *as* Montoute *approached* Carr with the shotgun. Montoute at 185. Maybe, VARTANIAN did not hear Ofc. HARRELL.  In the alternative perhaps, ROOBIK

---

[57] Needless to say, the "Harrell" in Harrell v. Decatur is not relation to RICHARD HARRELL, the names are just unfortunate coincidence.

VARTANIAN, like Montoute, purposely did not *drop his weapon* as ordered because "...*because the officer had a gun on him, and 'I think maybe he kill me too.'*" <u>Montoute</u> at 183, FN 2.   In any event, the *facts* apparent and known to Ofc. RICHARD HARRELL were that VARTANIAN, like Frances Montoute,  did <u>not</u> obey the lawful orders of the Police Officer, and in circumstances far more immediately threatening to the Officer, Ofc. HARRELL defended himself and others by shooting VARTANIAN...one time.     As in <u>Montoute</u>, in the instant case Plaintiff, VARTANIAN must establish that under the circumstances known and experienced by Ofc. RICHARD HARRELL, that no *reasonable officer* could have believed that VARTANIAN posed a risk of serious physical injury to Ofc. HARRELL or others. This is a burden that VARTANIAN cannot bear, because it's just not so.

Lest the Plaintiff argues that Ofc. HARRELL should have used an alternative to deadly force or a lesser use of force, it is important to note that the 11th Circuit has held that there is no precedent in this Circuit that holds that an Officer is required under the Constitution to *use all feasible alternatives*, or even the *least intrusive alternative,* to avoid a situation where deadly force can justifiably be used. <u>Menuel v. City of Atlanta</u>, 25 F.3d 990, 996 (11th Cir. 1994). [58]

As shown, and as has been offered supra in the *Statement of Undisputed Facts*, Officer RICHARD HARRELL knew nothing about the several times that VARTANIAN and Jeffie Jones and Phillip Ibrahim had come into contact with each other on the late night hours of Friday, September 5, 2008 and the early morning hours of Saturday, September 6, 2008.  Officer HARREL knew nothing about *why* the group of white males were chasing the black males, only that it appeared that they were.   Officer HARRELL did not know *who started it*, or what *it* was about.   Officer HARRELL did not know that ROOBIK VARTANIAN lived in the building adjacent to where the Officers had parked their Van.   Officer RICHARD HARRELL only knew

---

[58] See also: <u>Plakas v. Drinski</u>, 19 F.3d 1143 (7th Cir. 1994); <u>Ogletree v. Columbia County,</u> 34 F.Supp.2d 1349, 1363 (M.D.Fla.,1997);  <u>Scott v. Henrich</u>, 39 F.3d 912 (9th Cir. 1994); <u>Cole v. Bone</u>, 993 F.3d 1328 (8th Cir. 1993).

what he saw and heard, i.e. as set forth in the "*Facts*" supra, and that he had to act, in a split-second decision, on the perceived and very real threat posed by ROOBIK VARTANIAN approaching carrying a handgun while yelling angrily at two (2) black males and then, when challenged to drop his weapon by the Officer, turning toward Officer HARRELL while VARTANIAN was still holding the borrowed *Taurus* handgun in his hands.   These are the facts, and they are not in dispute and cannot be disputed by any *relevant* or *material* materials. [59]

The material and relevant facts of this case, relative to the defense of *Qualified Immunity* of RICHARD HARRELL, are simple and straight forward and must be reviewed from the perspective of what a *reasonable* Police Officer knowing and experiencing what Officer HARRELL *saw, heard,* and *otherwise was aware of*.   Any other *facts*, such a what did or did not occur between ROOBICK VARTANIAN, the other Club Prana bouncers, and or the two (2) fleeing black males Jeffe Jones and Philip Ibrahim, or as to *why* VARTANIAN was chasing them *or* heading to his own apartment (gun in hand), are extraneous, irrelevant, and/or immaterial to the ultimate determination as to whether or not Ofc. RICHARD HARRELL's actions were *reasonable* under the circumstances, did not violate VARTANIAN's constitutional rights, and are shielded by *Qualified Immunity*.

The Plaintiff will doubtlessly attempt to broaden the factual events of all the attendant circumstances in order to *defend* ROOBIK VARTANIAN'S acquiring the *Taurus* handgun from fellow Club Prana employee Kenneth Bennett [60], and then chasing the two (2) black males (or one of them) and will likely argue that ROOBIK VARTANIAN was in fear for the life of his child and therefore had good reason (in his mind)  to arm himself and chase after the two black males or, in the alternative,  to happen to be running in the same direction as the black males in order to protect his home and child at 1211 East 6th Avenue.   But, all of that argument is <u>not</u>

---

[59] See Composite Deposition of K. Bennett attached hereto as Exhibit "I".
[60] See <u>id</u>.

*relevant* or *material* to the considerations of this Honorable Court as to whether or not Officer RICHARD HARRELL should be shielded in this actions by *Qualified Immunity*.  This is so, because RICHARD HARRELL did not know these *facts* and had no reason to know about these facts, had no time in the rapidly evolving events to ascertain these *facts*, and therefore these additional *facts* are <u>not</u> *relevant* or *material* to the analysis of this Court as to the shield of *Qualified Immunity*.  As the testimony of Officer RICHARD HARRELL and Ofc. Cesare Myles, and others show, Ofc. RICHARD HARRELL had no foreknowledge of any of the preceding events between the black males from Orlando and ROOBIK VARTANIAN and other staff employees at Club Prana, and before.   Officer RICHARD HARRELL had no idea *why* ROOBICK VARTIANIAN was proceeding in the direction of the two black males (all of whom were unknown to Ofc HARRELL and Ofc. Myles) [61].    But, Officer HARRELL *did* know what he saw and heard and that was: a large male, running or otherwise moving quickly in the direction of the two (2) black males, verbalizing angry, racially charged threats at them, while carrying a silver and black Taurus 9mm handgun in a *"low ready"* position. [62]

For the purposes of this Court's review, it does not matter *why* ROOBICK VARTANIAN was armed, nor does it matter *why* he was running in the direction of the two black males with a gun in his hand.   It does not matter, because there is no way that Officer RICHARD HARRELL, Officer Cesare Myles, or any other *reasonable Police Officer* in their place could have known any more than what HARRELL and Myles saw, heard, and otherwise experienced in those early morning hours.   Acting on what Officer RICHARD HARRELL saw, heard, and otherwise experienced, in the totality, any *reasonable officer* would have perceived an immediate threat to himself, his partner, to the unknown black males and others, and therefore would have drawn their firearm, identified themselves, and ordered VARTANIAN to put down his weapon.   Once

---

[61] See Affidavits of Ofc. RICHARD HARRELL and Ofc. Cesare Myles, attached hereto as Exhibits "A" and "B" respectively.
[62] See Affidavit of Ofc. RICHARD HARRELL attached hereto as Exhibit "A".

challenged by the Police (Ofc. HARRELL) ROOBIK VARANIAN *should have* put his gun down as ordered. He didn't.  But, what if he was going to give up?  What if he didn't hear the Officer?  What if he was startled by the command by Police and was simply turning toward Officer RICHARD HARRELL while still holding the Taurus 9mm in his hands?   In any of these scenarios, in any case, on the facts known to Ofc. HARRELL, any *reasonable officer* in RICHARD HARRELL's position would have or should have fired their weapon to stop the perceived and real threat, i.e. ROOBIK VARTANIAN. [63]   As attested to by Police Expert David M. Grossi in his Affidavit, Officer HARRELL acted reasonably, within the law, within policy, within national standards of officer conduct, and within the training of the State of Florida given these tense and rapidly evolving event. [64]   And that is the heart of the matter here before this Court.

The perceived threat that Officer RICHARD HARRELL experienced in the early morning hours under rapidly evolving circumstances, required the kind of *split-second decision* that HARRELL was called upon to make and the kind of *split-second decision* that the courts have approved numerous times in the past and that the courts *are loath to question.* [65] Nationwide Officer Killed Summaries attest to the numbers of Officers who did <u>not</u> react fast enough to prevent their own deaths.   While it is *tragic* that ROOBICK VARTANIAN was killed, as the 11th Circuit Court of Appeal ruled in the recent case of <u>Penley v. Eslinger</u>, 605 F.3d 843, 856 (11th Cir. 2010), Officer RICHARD HARRELL did not violate either the Constitution or Florida law when he shot ROOBIK VARTANIAN.   In both the case of <u>Penley</u> and in the instant case at bar, *Penley* and VARTANIAN were the cause of their own fates and not the Officers performing the important and dangerous jobs they are hired to do.

---

[63] See Affidavit of Police Expert David M. Grossi attached hereto as Exhibit "D".
[64] <u>id</u>.
[65] "are loath to second-guess the decisions made by police officers in the field." <u>Vaughan v. Cox</u>, 343 F.3d 1323, 1331 (11th Cir.2003).

In order for VARTANIAN to succeed in his § 1983 claim against Officer RICHARD HARRELL, in his Individual Capacity,  both of *Excessive Force* and *unlawful seizure* [66] , he has the burden of demonstrating that Officer RICHARD HARRELL did not have *Probable Cause* to use Deadly Force to stop ROOBIK VARTANIAN [67]  as a violation of the 4th Amendment, [68]  a burden that VARTANIAN cannot bear.

Even if the Court determines that the Plaintiff has adequately alleged the commission of acts that violated *clearly established law* in the SECOND AMENDED COMPLAINT [DE#19], the Defendant, RICHARD HARRELL is entitled to Summary Judgment in this case where Discovery has failed to uncover reliable *relevant* or *material* evidence sufficient to create a *genuine issue* of fact as to whether the Defendant RICHARD HARRELL committed those acts. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985).

Moreover, in the case of Kesinger v. Herrington,  381 F.3d 1243, 1248 (11th Cir. 2004), the 11th Circuit Court of Appeals noted that **under Florida law**, even a non-police officer (private actor) *"is justified in the use of deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or to prevent the imminent commission of a forcible felony." See* Chapter, 776.012, *Florida Statutes*

Here, for the reasons argued supra, Officer RICHARD HARRELL is entitled to *Qualified Immunity* since it was *reasonable* for him (or any other *reasonable officer* under these circumstances and facts shown) to believe that he had *Probable Cause* to use deadly force to protect himself and others from the threatening behavior of ROOBICK VARTANIAN, which regardless of the excuses offered for VARTANIAN's actions, are clear on their face that any person/Officer viewing this large, angry man, carrying a firearm would have *reasonably* believed that he posed an immediate deadly threat to persons within his range.

---

[66] Which are clearly different assertions of the same essential claim, i.e.: that Officer RICHARD HARRELL *allegedly* did not have *probable cause* to use Deadly Force, in defense of himself and others from the threat posed by ROOBICK VARTANIAN and the loaded gun he was carrying.
[67] Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir.1998); Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir.1997).
[68] Colosimo v. City of Port Orange, 2005 WL 1421294, *6 (M.D.Fla. 2005).

24

WHEREFORE, the Defendant, Officer RICHARD HARRELL, in his Individual Capacity, respectfully requests that this Honorable Court **Grant** this Defendant's, **Motion for Summary Judgment**, and for such other relief as this Court deems appropriate.

Respectfully submitted,

*John A. Makholm*
**John A. Makholm, Esquire**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **July 1, 2011**, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using the CM/ECF system who will send electronic notice to: **Anthony T. Prieto, Esquire** (Attorney for Plaintiff), *Prieto, Prieto, & Goan, P.A.* and **Michael P. Maddux, Esquire** (Attorney for Plaintiff) *Michael P. Maddux, P.A.;* and to: **Ursula D. Richardson, Esquire,** (Attorney for Defendant-City of Tampa) *Assistant City Attorney-City of Tampa.*

*John A. Makholm*
**John A. Makholm, Esquire**
FBN: 463302
Lead Trial Attorney
*The Makholm Law Group*
One Capitol Center
696 - First Avenue North
Suite #205
St. Petersburg, FL 33701-3610
727/823-5100; FAX 727/823-5114
E-Mail: makholm@verizon.net
Attorneys for Defendant,
Officer Richard Harrell
*Defending those who Protect Us!*
