UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER VARTANIAN, as personal
representative of the Estate of Roobik
Vartanian,

    Plaintiff,

v.                                                    CASE NO.: 8:10-cv-1367-T-23EAJ

CITY OF TAMPA and
RICHARD HARRELL,

    Defendants.
_____/

## **ORDER**

The plaintiff sued (Doc. 2) in state court as the personal representative of the estate of Roobik Vartanian, the plaintiff's husband, who died after the defendant Richard Harrell ("Officer Harrell") shot him. The defendants removed (Doc. 1). The amended (Doc. 19) complaint alleges two claims under state law against the City of Tampa (the "City") and a claim under 42 U.S.C. § 1983 ("Section 1983") against Officer Harrell. Both the City and Officer Harrell move (Docs. 34, 40) for summary judgment. The plaintiff responds (Doc. 43) in opposition.

### Background

The following facts are undisputed.[1] Roobik Vartanian worked at Club Prana, a nightclub located on 1619 East 7th Avenue in the Ybor City area of Tampa, Florida. In the early hours of September 6, 2008 (around 1:00 a.m.), Vartanian participated in ejecting a patron—Jeffie Jones of Orlando, Florida—from Club Prana. During the

---

[1] The plaintiff identifies (Doc. 43) only three material facts in dispute.

ejection, a heated exchange occurred between Vartanian and Jones.  Following the exchange, Jones departed and Vartanian obtained from another Club Prana employee a .40 caliber Taurus semi-automatic pistol.  Holding the gun in his hand, Vartanian pursued Jones in the direction of East 6th Avenue.[2]

Around the same time, Officers Harrell and Myles patrolled Ybor City in an unmarked Chevrolet Astro minivan.  Officer Harrell drove the van and Officer Myles occupied the passenger seat.  Officers Harrell and Myles each wore plainclothes, along with a black vest adorned with the word "police" and a police badge attached to a lanyard.  As the officers drove east on East 6th Avenue, two men crossed in front of the van toward the south side of East 6th Avenue.  The officers noticed other men on the north side of East 6th Avenue in pursuit of the first two men.  Officer Harrell stopped to monitor the situation.  Moments later, Officer Harrell noticed another man (Vartanian) arrive on the scene (on the north side of East 6th Avenue) with a gun.  Officer Harrell alerted Officer Myles to the presence of the gun, and both officers immediately exited the van.[3]

At this point, the plaintiff's version of the facts and the defendants' version of the facts diverge.  Officer Harrell and the City claim that Vartanian, moving aggressively toward the first two men, yelled and threatened to kill them.  Specifically, Officer Harrell claims that he heard Vartanian yell "I'm gonna shoot that motherfucker" and "I'm going to kill that nigger."  Officer Harrell claims that Vartanian held the gun in a "low ready"

---

[2] (Docs. 19, 34, 40)

[3] (Docs. 19, 34, 40)

position. According to Officer Harrell, upon exiting the van Officer Harrell yelled to Vartanian, "Police. Drop your weapon! Police. Drop your weapon!" Officer Harrell estimates his distance from Vartanian at approximately twenty-five to thirty yards away. With the gun in his right hand, Vartanian turned toward Officer Harrell, who fired one shot at Vartanian. The bullet struck Vartanian in "the left chest area." (Although Officer Myles heard Officer Harrell's commands, Officer Myles witnessed neither Vartanian's response to the commands nor Officer Harrell's gunshot.) Shortly thereafter, Vartanian died from his wound.[4]

In contrast, the plaintiff claims that, as Vartanian approached the scene, Vartanian held the gun[5] in his hand at his side and not in a two-handed "low ready" position.[6] The plaintiff presents the affidavits[7] of two eye-witnesses, Recia Henry and Joshua Henry. Recia Henry worked as an attendant in the 17th Street parking lot behind Club Prana. Recia's husband, Joshua, was visiting Recia at the time. Recia claims an unobstructed view of the shooting from approximately twenty yards, and Joshua claims an unobstructed view of the shooting from thirty to forty feet. Both witnesses assert that before the shooting they observed two men walking past the parking lot and heading in the direction of 1611 East 6th Avenue. Minutes after the two men walked by, approximately five to six security guards from Club Prana (including

---

[4] (Docs. 34, 40)

[5] The plaintiff claims that Vartanian carried the gun because Jones and another man threatened Vartanian's home and family. (Doc. 43)

[6] (Doc. 43, 43-1, 43-2)

[7] (Docs. 43-1, 43-2)

Vartanian) passed the parking lot and headed in the same direction.  According to both witnesses, Vartanian neither shouted a racial slur at the two men nor threatened the two men.  When Officer Harrell emerged from the unmarked van, Officer Harrell (according to both witnesses) immediately fired at Vartanian without warning and without either identifying himself as a police officer or ordering Vartanian to drop his weapon.  Throughout the episode, Vartanian's weapon remained at his side, neither raised nor pointed toward anyone.[8]

In moving for summary judgment, Officer Harrell claims that qualified immunity protects him from the plaintiff's excessive force claim under Section 1983.  The City argues that, based on the fact that Officer Harrell's use of force was not excessive in violation of the Fourth Amendment, the City is entitled to summary judgment on the tort claims of battery and false arrest.  In response, the plaintiff argues that genuine issues of material fact preclude summary judgment in favor of either the City or Officer Harrell.

## Discussion

"Because qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest possible stage in the litigation.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curium)).  "Qualified immunity permits a government official to perform a discretionary duty 'without the fear of personal liability or harassing litigation' and protects from suit 'all but the plainly incompetent.'" Greer v. Hillsborough County

---

[8] (Docs. 43-1, 43-2)

Sheriff's Office, 2006 WL 2535050, *1 (M.D. Fla. 2006) (citing Gonzalez, 325 F.3d at 1233). A government official performs a "discretionary duty" if the official acts in furtherance of an official duty and the act falls within the scope of the official's authority. If a defendant demonstrates that the defendant acted within the defendant's "discretionary function," the burden shifts to the plaintiff to overcome qualified immunity. See Rushing v. Parker, 2010 WL 918323 (11th Cir. 2010).

To defeat qualified immunity, the plaintiff must prove a constitutional violation "clearly established" by existing legal precedent. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). "For the law to be 'clearly established,' case law must have earlier developed in such a concrete and factually defined context to make it obvious to [a] reasonable government actor[] . . . that what [the government actor] is doing violates federal law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000). The plaintiff must establish facts showing "'an affirmative causal connection'" between the alleged act or omission and the alleged constitutional violation. Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010).

If, as in this instance, an excessive force claim arises from "an arrest or investigatory stop of a free citizen," the claim "invoke[s] the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394-95 (1989); Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth

Amendment.").[9]  An assessment of reasonableness "must account 'for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  Jean-Baptiste v. Gutierrez, 627 F.3d 816, 820-21 (11th Cir. 2010).  If an officer uses deadly force, Guiterrez explains that:

> Reasonableness is dependent on all the circumstances that are relevant to the officer's decision to use deadly force, including the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force.  Perspective also is crucial to the analysis: "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded."

627 F.3d at 821 (citations omitted).

In this instance, Officer Harrell asserts a reasonable belief (based on his version of the facts) that Vartanian posed an immediate threat to both Officer Harrell and others at the scene.  From Officer Harrell's perspective, Vartanian was engaged in serious crimes, i.e., openly carrying a firearm, improper exhibition of a firearm, and aggravated assault.  Officer Harrell observed conduct suggesting a deadly, immediate threat to both

---

[9] Graham elaborates the reasonableness standard applicable to Fourth Amendment excessive force claims:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises. With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97 (citations omitted).

himself and others.  Vartanian's failing to obey Officer Harrell's commands and failing to drop his weapon demonstrated (from Officer Harrell's perspective) resistance. However, the plaintiff asserts (1) that Vartanian's conduct exhibited no immediate threat to Officer Harrell or others and (2) that Vartanian neither resisted nor attempted to evade either an arrest or a command by Officer Harrell.  The plaintiff provides the account of two eye-witnesses who dispute Officer Harrell's version of the facts, including (1) that Vartanian shouted threats at Jeffie Jones and his companion as they stood on East Sixth Avenue, (2) that Vartanian held the gun in a "low ready" position, and (3) that Officer Harrell identified himself as a police officer and warned Vartanian to drop his weapon before Officer Harrell shot Vartanian.  Although the plaintiff concedes that Vartanian carried a firearm, the plaintiff argues that Vartanian engaged in no other threatening conduct toward either Jones or Officer Harrell.  (In fact, the plaintiff argues that Vartanian's conduct comported with his purpose that, although irrelevant to the reasonableness analysis, was purely defensive in nature.)  Construing the facts and drawing each reasonable inference in the plaintiff's favor, the plaintiff demonstrates a genuine issue of material fact as to whether Officer Harrell's use of deadly force was reasonable under the circumstances.

Conclusion

Because the plaintiff demonstrates a genuine issue of material fact, the motions (Docs. 34, 40) for summary judgment are **DENIED**.

ORDERED in Tampa, Florida, on August 11, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE